## KIRKMAN, Ex'r, et al. vs. MASON et als.

1. Where the payment of a legacy is made to depend on the estate being worth a specified amount after the debts are paid, the point of time at which the value of the estate is to be ascertained is not that of the testator's death or of the probate of his will, but that at which the assets are applied in due course of administration to their proper objects in conformity with the directions of the will.

2. If the payment of a legacy is made to depend on the condition that the estate in the hands of the executor is worth a specified amount after the debts are paid, the distributive share which is allotted to the widow, in consequence of her dissent from the will, is not to be taken into the estimate in ascertaining the value of the estate.

Error to the Chancery Court of Lauderdale.    Tried before the Hon. David G. Ligon.

Ormond, Wm. Cooper and Irvine, for plaintiffs in error:

1. The decree of the chancellor assumes, that the property of the testator was in the hands of the executor from the time of the probate of the will for the purpose of proving its value to be $80,000.    This is manifestly wrong.    The previous clauses of the will required the executor to keep the estate together with the slaves, &c. for one year, and authorised him to do so for two years, after which it was to be sold on a credit of one and two years, and then converted into "ready money."    So that it is manifest the testator contemplated that at least four years should elapse before the estimate of the value of the estate could be made.

2. The effect of the dissent of the widow to the will was to invest her with a title to one half the personal estate as dower, there being but one child, and this produced a virtual intestacy as to that portion of the estate.—Clay's Dig. 300, § 20.    This portion of the estate never came to the hands of the executor, and was therefore not a fund for the purpose of paying legacies.

3. Though events happening subsequent to the will cannot vary its construction, yet it is the duty of the court to place itself if possible in the situation of the testator, to ascertain if possible his meaning, and as in this case the whole scheme of the will depended on the wife abiding by it, it is impossible to sup-

Kirkman, ex'r, et al. v. Mason et als.

pose this was not an event contemplated by him. Therefore it was, doubtless, that he required the estate to be kept together at least one year by his executor, by which time it would be ascertained whether the widow would abide by or dissent from the will.—1 Jarman on Wills, 259; 1 Cox, 324; 1 Vesey jr. 475; 11 ib. 457; 1 Greenl. Ev. § 287.

L. P. WALKER, for defendants:

1. It is not contended on the part of the defendants in error that their legacies are not *contingent*. This is expressly admitted. But we insist that the *contingency* upon which they were to vest is this—*when*, after the payment of the debts of the testator and deducting the portion given to the widow *by the will*, his *estate*, meaning thereby property of all sorts, in the hands of the executor, amounted in *value* to $80,000. The dispute then is not as to the *character* of the legacies, both parties admitting them to be *contingent*, but it is as to *what* is the contingency upon the happening of which they were to vest.

2. The *dissent* of the widow from the provisions of the will cannot in any wise affect the construction to be placed upon it. "No extrinsic evidence furnished by facts occurring *subsequent* to the death of the testator can be allowed to alter the *construction* of a will, or to wrest from a legatee any rights conferred by it." Jeremy's Eq. 54; 4 Vesey, 329; 19 ib. 367, 533; 1 Merivale, 360, 419; 2 McCord's Ch. 274; 1 Johns. Ch. 233. "A will must be construed as it would be at the *instant* of the testator's death, and no subsequent fact or event can alter that construction."—2 Douglass, 494, note 1; 3 Burrows' Rep. 1581; 2 Dallas, 244; 18 Johns. 381; 1 Vesey sen. 153; Ram on Wills, 107-8; 2 Hill's Rep. 85-8. Nor will inconvenient consequences, not in contemplation of the testator at the time of making the will, be considered in construing it.—1 Meriv. 358, 419; 7 Ves. 368. Now the widow's *dissent* is certainly an *event*, and occurred *subsequent* to the *publication* of the will. The court therefore, in placing a construction upon the will, has no right to know that the widow has dissented.—See further, Coke on Litt. 646, note b; 18 Vesey, 466; 1 Brown's Ch. 472; Wigram on Wills, 8.

3. In all cases of *contingent* legacies, the *criterion* by which to ascertain when they become *vested* must be furnished by the

will itself, and is to be discovered upon a mere inspection of the will by the court.   Of course then, anything which changes or subverts the *criterion* furnished by the will, in order to ascertain when these legacies vested, is altogether *dehors* the record, and cannot be considered at all in inquiring whether the legatees are entitled.   To permit the widow's *dissent* to affect the construction of the will would be to alter totally the *criterion* for the ascertainment of the *contingency* upon which the legacies depend, and to set up an entirely new and different one.   What is the *criterion* which the *will* furnishes?   It is this: If after the payment of the debts and deducting the portion given to the widow by the will, the balance of the estate in the hands of the executor shall amount to $80,000, these legacies were to vest. The debts (as the register reports) were about $30,000, and the widow's portion under the will was worth about $10,000.   The *will* then in effect provides, that if the estate in the hands of the executor, after paying out $30,000 (debts) and deducting property worth $10,000, (the widow's portion,) shall amount to $80,000, the legacies were to vest.   Now if regard is to be had to the act of dissent, this criterion is completely upset, for the widow's share after her dissent became $53,000: And the construction contended for by the plaintiff in error is that our legacies were to vest, if after paying the debts ($30,000,) and the widow's share *after her dissent*, ($53,000,) the balance of the estate amounted to $80,000: That is to say, the *criterion* furnished by the will is to deduct from the entire estate $40,000— that contended for by the plaintiff in error is to deduct $83,000. Obviously the latter is a complete subversion of the former, and by adopting it an entirely *new will* is made.

4.  The widow's *dissent* can defeat the legacies only upon the ground that it operates an *implied revocation* of them.   But revocations are never implied except in case of a *subsequent marriage, birth of a child, or birth of posthumous* child.

DARGAN, C. J.—This bill was filed by the defendants in error to recover legacies bequeathed to them by the last will of Joseph L. D. Smith.   By the first clause of the will the testator directed that all debts should be paid as they became due:  He then bequeathed to his wife his furniture, carriage and horses, and some slaves, and directed that she be supported

out of the proceeds of his estate, with the same ease and comfort to which she was accustomed during the life of the testator, and in the event of her marriage he bequeathed to her ten thousand dollars, the property he had given her to be considered as part of that sum. By the third clause of the will the testator directs that his slaves in Mississippi be sold at the expiration of a year from his death, unless in the opinion of his executors it be advisable not to sell; in that event, they were directed to rent land in Mississippi and save another crop; and at the expiration of this year, they were directed to sell the slaves, horses, cattle and other stock on a credit of one and two years. He also directed that the lands that he owned on the Mississippi, in co-partnership with Thomas Kirkman, should be sold as soon as fifteen dollars per acre could be obtained for them on a credit of one and two years. He then gives directions as to the education of his only daughter, Jane. The seventh item of the will is in the following language: "After my debts are paid, and when the estate in the hands of my executors shall amount to eighty thousand dollars, I give and bequeath to each of my executors one thousand dollars—To my sister, Rebecca F. Williams, two thousand dollars; to Rebecca J. White one thousand dollars; to Rebecca E. Dancy one thousand dollars; to Mary Jane Stodder one thousand dollars; to Malinda K. Williams one thousand dollars; to Henry D. Smith one thousand dollars; to Thomas Williams, of Mississippi, five hundred dollars; my interest in Texas lands to Lawrence Williams, and the rest and residue of my estate, both real and personal, I give and bequeath to my only daughter, Jane." The testator then proceeds to make a further disposition of the property in the event of her death without issue. In a short time after the probate of the will the widow dissented from it and claimed the share she was entitled to receive by law. In directing an account to be taken with the view to ascertain whether the estate in the hands of the executors, after the payment of the debts, amounted to $80,000, the chancellor determined that the dissent of the widow from the will, by which she became entitled to one half of the personalty, there being but one child, could not be considered, and that the share she became entitled to receive under the statute of distributions must be considered as a part of the estate in the hands of the executors. He also directed the es-

10

tate to be valued at the date of the probate of the will, without regard to any subsequent loss or depreciation that the estate might have suffered. The estate thus valued was ascertained to amount to more than eighty thousand dollars, after deducting the amount that the testator owed at his death, whereupon a decree was rendered against the executor, in favor of the complainants.

We do not think it material to enquire whether the legacies are vested or not. If we were to admit that they were technically vested, so that the representatives of the legatee would be entitled to demand the legacy if the legatee himself would have been entitled to it, had he been living, still the question would be the same, and that is, whether the estate in the hands of the executors, after the payment of the debts, is of the value of eighty thousand dollars. It is on this contingency that the complainants are entitled to demand payment of their legacies.

It will be at once seen that the time of the valuation of the estate becomes an important enquiry, when the payment of legacies is made to depend on such valuation. For instance, if a legacy is directed to be paid on the condition that the estate is worth $50,000, after the payment of all debts—suppose the estate at the time of the probate of the will was worth this sum, over and above all the debts that the testator owed, but owing to losses for which the executor was not responsible, before the debts were all paid, the estate should become insolvent, could the executor be charged with the payment of this legacy? All will answer that he could not, unless the loss to the estate originated from some act or neglect of duty on his part. So if the estate at the time of the death of the testator would not be valued at a sum sufficient to pay the debts and leave a balance of $50,000, but from a sudden rise in the value of property, in a short time after the death of the testator and before the estate was administered, it was so increased in value that it could well pay not only the debts but also the legacies, could it be contended that the legatee could not receive payment of his legacy, because at the moment of the death of the testator, or at the time of the probate of the will, the estate would not have been valued by prudent men at a sum sufficient to entitle the legatee to demand payment? We think these supposed cases show the impropriety of fixing on the time of the death of the testator or

of the probate of the will as the time at which the value of the estate is to be ascertained. If we say the right to payment depended on the value of the estate at the death of the testator, the legatee would be in many cases entitled to demand it, although the debts were not all paid : On the contrary, he might in many cases not be entitled to his legacy, although the estate was able not only to pay the debts, but also to pay all the legacies, according to the provisions of the will. We cannot, therefore, adopt the time of the death of the testator, nor of the probate of the will, as the correct point of time at which to ascertain the value of the estate. Either might lead to results not only opposed to the intention of the testator, but even opposed to law. In the case of the Att'y Gen'l v. Robins, 2 P. Wms. 23, a testator gave several legacies, and at the latter part of his will he added that he apprehended there would be a considerable surplus beyond what he had given, and therefore he gave other legacies. At the time of the death of the testator the estate was sufficient to pay all the legacies, but owing to the sudden fall in the value of South Sea stock, there was a deficiency. It was decreed that the later legacies were lost. It was the evident intention of the testator that the legacies given in the previous part of the will should be prefered, and as the estate, although sufficient at his death to pay all legacies, became insufficient in the course of administration, the loss was thrown exclusively on those later legacies. In the case of Silsby v. Silsby, 3 Cranch, 249, the testator gave several legacies and annuities after the payment of his debts. The will then provided that if the personal estate and the produce arising from the sale of his real estate should not be sufficient to pay the several legacies and annuities bequeathed by the testator, then he directed that the annuities and legacies should not abate in proportion, but that the whole of the deficiency should be deducted out of the legacies of $1500 bequeathed to Enoch Silsby. At the time of the death of the testator, the estate was ample to pay all debts and legacies, but owing to the bankruptcy of the executor there was a deficiency. The question arose between Enoch Silsby and the other legatees, whether the loss should be borne exclusively by him? He contended that whether the estate was sufficient or not to pay all the legacies, must depend on the value of it at the death of the testator, and that he should not be made to bear the loss

exclusively, resulting from the waste and insolvency of the exe-
cutor.  Judge Marshall said, " that the time of ascertaining the
sufficiency of the estate is when the will is carried into execu-
tion by the application of the funds to their proper objects,
under the directions of the will; when that application is made,
if a deficiency appears, then the loss must be borne by Enoch
Silsby."  This opinion is in accordance with the well settled
principles of law.  For instance, if the estate is able to pay not
only the debts, but also all legacies at the death of the testator,
but owing to the waste of the executor there is a deficiency, the
legatees must bear the loss as between them and the creditors,
and the value of the estate at the death of the testator can have
no influence on the rights of creditors, in a controversy with
legatees.  So, if some legatees are to be prefered in payment to
others, by the directions of the will, and in the course of admin-
istration a deficiency occurs, the prefered legatees are not to
bear the loss of this deficiency as between them and the other
legatees, whether the deficiency occurs from the waste of the exe-
cutor or from the depreciation of the value of the estate from
any accidental cause for which the executor is not responsible.—
Marsh v. Evans, 1 P. Williams, 668 ; 2 Lomax on Executors,
122; 2 Williams on Ex. 837; Fonnereau v. Poyntz, 1 Bro. C.
C. 478; Humphries v. Humphries, 2 Cox, 186; Page v. Lap-
engwell, 18 Vesey, 466.   These authorities show that when
the payment of a legacy is made to depend on the sufficiency of
the estate to pay other prefered legacies, this sufficiency of the
estate can only be ascertained when the assets are applied in due
course of administration to their proper objects, in conformity
with *the directions of the will*, unless indeed it was the intention
of the testator that their payment was to depend on the valuation
of the estate at some different time.  The intention of the tes-
tator, however, in the case before us, is in harmony with this
rule.   His language is, "After my debts are paid and the estate
in the hands of my executors shall amount to $80,000, I give,"
&c.   When did he intend that it should be ascertained whether
the estate in the hands of his executors amounted to $80,000?
His own language *furnishes the answer—after his debts were paid.*
This is the time at which the estate in the hands of the executor
should have been valued.   The time adopted by the chancellor
might lead to results not only opposed to the intention of the

Kirkman, ex'r, et al. v. Mason et als.

testator, but repugnant to the whole scheme and design of the will. It was the evident intention of the testator to make an ample provision for his daughter, Jane, for she was the particular object of his affections. Now suppose the estate was worth one hundred and ten thousand dollars, at the time of the probate of the will, and the debts amounted to $30,000, and that shortly after the probate of the will the estate had suffered a loss of $50,000, there would then have been left but $30,000 for the payment of legacies, and the dissent of the widow from the will would have entitled her to $15,000 of this $30,000. If these legatees could claim this remaining fifteen thousand dollars, in opposition to the daughter of the testator, we should leave her in the case supposed destitute and penniless. We do not think that the will would warrant a construction that might lead to such results, but on the contrary, the plain intention of the testator is that if his estate in the hands of his executors, after the payment of his debts, shall amount to the sum of $80,000, then he gave the legacies sought to be recovered, and we cannot, without doing violence to his intention, fix upon a time anterior to that for the purpose of estimating the value of the estate.

It may, however, be urged that to make the payment of the legacies depend on the valuation of the estate, after the payment of the debts by the executor, would enable him to postpone the payment to a distant day, and should the value of the estate be diminished in the meantime, the legatee may be defeated by the improper conduct of the executor. The cause as it is now presented to us does not require us to decide this question; but it may well be questioned whether the improper or negligent conduct of an executor can under any circumstances defeat the payment of a legacy as between him and the legatee, or postpone the time at which the legatee could demand payment. It is, however, contended that no event subsequent to the death of the testator can be considered in construing a will, and that we must give the same construction to this will, although the widow has dissented from it, that we would have given had she abided by it. To this argument we fully assent; but the construction of a will and whether there are funds to meet all its provisions, are two very different questions. Subsequent events may diminish or increase the funds, but this increase or diminution

will not affect the construction. The will speaks from the death of the testator—subsequent events cannot alter its language. We must take the intention ascertained from the language of the will as our guide in the application of the funds to the provisions of the will. Let us then see what is the intention of the testator. " After my debts are paid and the estate in the hands of my executors shall amount to eighty thousand dollars, I give," &c. This is his language. What did he intend? First, that his debts should be paid. Secondly, that his estate in the hands of his executors, subject to the provisions of his will, should amount to $80,000 before *these legacies should be paid.* This being the intention of the testator, as expressed by the will, we must be guided by it, although subsequent events may have so altered or depreciated the estate that these legacies may not be paid. The dissent of the widow withdrew her distributive share from the operation of the will and from the hands of the executor for any purpose of the will, and cannot be estimated in taking an account of the value of the estate; for we think it clear that the testator intended that an estate of $80,000, subject to the provisions of his will, must be found to be in the hands of his executors after the payment of his debts, before the complainants should be entitled to receive their legacies. The distributive share of the widow should not therefore have been taken into the account—she becomes entitled to it independent of the will, indeed, in opposition to it—and it cannot be said to be in the hands of the executor for any purpose contemplated by the will. But we think the legacy bequeathed to her by the will is a portion of the estate that should be taken into the account. She cannot claim her distributive share and also the legacies bequeathed to her by the will. She abandoned all benefits under the will, when she dissented from it. That portion of the testator's estate designed for her by the will therefore falls into the estate in common with the testator's other property, and must be valued as such in estimating the amount of the estate. The correct rule in taking the accounts is this—to ascertain the value of the testator's estate subject to the disposition of his will, at the time his debts were paid. If it amounts to $80,000, then the complainants are entitled to recover. If his estate after his debts were paid, exclusive of the distributive share of the widow, which was withdrawn from the

operation of the will by her dissent, does not amount in value to $80,000, then they are not entitled to recover.

It may be proper, however, to add, that the interest of the testator in the Texas land was correctly excluded in taking the account, for it is very clear that the testator did not intend that his interest in Texas lands should be considered as a part of his estate in the hands of his executors.

Let the decree of the chancellor be reversed and the cause remanded for further proceedings.

PARSONS, J., not sitting.