THOMAS P. MORGAN, use of RICHARD C. PARKER
vs. THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Construction of Contract.*

A contract was made up of the following proposals and specifications:
"Washington, Dec. 6th, 1875.   To the Water Board of the City of
B.   Gentlemen: We propose to remove the deposit in Lake R. in
accordance with the appended specification, viz., six hundred
cubic yards per day for twenty-two (22) cents per cubic yard, not
less than 300,000 cubic yards shall be removed." The specifica-
tions appended were as follows: "The material from the great
basin of the lake, or from the entrance to Jones' Falls and Roland
Run, thence to near the Relay House, shall be removed to the shore
or land north of Lake bounded by mouth of Roland Run and
Ellicott's Branch.   All of the material shall be laid not less than
ten feet from the upper edge of the slopes, and distributed as
directed by the engineer, around the above bounds.   The material
removed from Roland Run will be deposited on each embankment,
also on Jones' Falls, as directed by the engineer of the Water
Board." * * * * "Should the Water Board direct periodical
operations of the machine, which will be of the clam-shell con-
struction, in consequence of the turbid condition (of the water)
that the agitation may produce, it shall be so understood and
accepted by the contractors.   (Signed.)   J. M. A., T. P. M."
Subsequently, at the request of the Water Board engineer, the
contractors submitted this proposal: "April 19th, 1876.   To the
Water Board of the City of Baltimore.   Gentlemen: In addition
to the dredging of Lake R., we propose to remove the material to
any point, directed by the engineer, on the City's land bordering
on the Lake.   And for all material moved beyond the limits of the
specifications, thirty-five (35) feet, which shall be the minimum,
and the maximum, the City's land.   We agree to do the work for
ten cents per cubic yard." This proposal was also accepted by
the Water Board.   After the commencement of the work, the con-
tract was assigned to M., who was accepted by the Water Board
as the contractor.   In an action by M. against the city, for breach
of contract in suspending the work before the whole lake had
been dredged, it was HELD:

1st. That the above proposals, with the specifications annexed, formed the contract.

2nd. That the proposal for dredging, when accepted, bound the employers not to stop the work before 300,000 cubic yards had been dredged.

3rd. That when the deposit in the lake, to the extent of three hundred thousand cubic yards had been removed, either party was at liberty to suspend the work and close the contract.

4th. That the plaintiff was not entitled under the contract to recover for spreading and grading the sediment removed, around the lake, done in accordance with directions of the engineer of the Water Board, as for extra work not provided for by the contract.

APPEAL from The Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—The evidence on both sides being in, the plaintiff offered the three following prayers:

1. If the jury believe that the proposals of December 6th, 1875, and April 19th, 1876, from Allen & Morgan, to the Water Board of Baltimore City, were accepted by said Board, then said proposals and acceptance constituted a contract between said Allen & Morgan and the defendant, which, under the laws and ordinances offered in evidence, the said Water Board had power to make; and if the jury shall further find, that subsequently the said Allen assigned and transferred all his rights and interest in said contract to the plaintiff, and that the said Water Board thereafter, with notice of such assignment accepted, and dealt with the plaintiff as the sole contractor, then by the true meaning of said contract, the plaintiff was bound and entitled to dredge the whole of Lake Roland; and if the jury shall further find, that before the whole of said Lake Roland was dredged, the said Water Board ordered and required the plaintiff to stop his work, and refused to permit him to go on and complete the same,

then such refusal was a breach of said contract, and the plaintiff is entitled to recover therefor; the jury are further instructed, that the measure of damages is the profit which they shall believe from the evidence the plaintiff would have made if he had been permitted to complete the said work.

2. That by the true meaning of the proposals of December 6th, 1875, and April 19th, 1876, offered in evidence, the plaintiff as the assignee of Allen & Morgan, was not required to grade the sediment excavated from Lake Roland and dumped at points beyond the distance of forty-five feet from the banks of said lake, and if the jury shall find that the plaintiff was required by the said Water Board or the Water engineer, acting under their directions, to grade said sediment as described in the testimony on the land bordering on said lake, and on the space between ten feet and forty-five feet from the banks of said lake, and that under said requirement the plaintiff did so grade said sediment, then such grading was extra work not included in the contract, and the plaintiff is entitled to recover the fair and reasonable cost and value of such grading.

3. If the jury believe that Allen & Morgan wrote and delivered the letters in evidence of December 6th, 1875, and April 19th, 1876, to the Water Board of Baltimore City, which were accepted by said Board, and that defendant enacted Article 53, of the Ordinance of the defendants offered in evidence; and if they further find that said contract was assigned by Allen to plaintiff with defendant's knowledge and consent, who dredged said lake and removed the deposits to a distance of forty-five feet from the edge of the slopes of the lake, and if they find that 13,710 cubic yards of material were so removed by plaintiff for which he has been paid twenty-two cents per cubic yard, then he is entitled to recover ten cents per cubic yard on such 13,710 cubic yards of material.

And the defendant offered the four prayers following:

1. If the jury find that the plaintiff was employed by the Water Board of Baltimore City to dredge Lake Roland in accordance with the terms and specifications contained in the two written proposals addressed to the Water Board by the plaintiff and James M. Allen, dated respectively, December 5th, 1875, and April 19th, 1876, which are in evidence in the cause, and that the plaintiff entered upon the execution of said work and continued to prosecute the same until in the month of April, 1880—the amount of 300,026¾ cubic yards of material had been excavated and removed from said lake by the plaintiff, and that the plaintiff was then notified and instructed by said Water Board to discontinue and cease dredging, then the plaintiff is not entitled to recover from the defendant in this action for any loss of profits or damage which he may have sustained by reason of not being allowed to continue said dredging after said quantity of 300,026¾ cubic yards of material had been excavated and removed from said lake as aforesaid.

2. That there is no evidence in the cause of any authority vested in the Water Board of Baltimore City by any law of the State or any ordinance of the Mayor and City Council of Baltimore, to enter into the contract with the plaintiff, mentioned in the second count of the amended declaration, nor any evidence of any subsequent ratification of said contract by the defendant, the Mayor and City Council aforesaid, and the plaintiff is not entitled to recover from the defendant in this action for any loss of profits or other damage which he may have sustained by reason of not being allowed to go on and complete said contract as alleged in said second count of the declaration.

3. That if the jury shall find that the plaintiff was employed by the Water Board of Baltimore City to dredge Lake Roland in accordance with the terms and specifications contained in the two written proposals addressed to

the Water Board by the plaintiff and James M. Allen, dated respectively December 5th, 1875, and April 19th, 1876, then the plaintiff was bound by his said contract to distribute the material excavated by him, and deposited on the borders of said lake, in such manner as the Water engineer might direct, and that the plaintiff is not entitled to recover from the defendant in this action, extra compensation, over and above the contract prices stipulated for in said proposals for grading the material so excavated and deposited by him as aforesaid, in accordance with the instructions of said Water engineer.

4. If the jury shall find that the plaintiff was employed by the Water Board of Baltimore City, to dredge Lake Roland, in accordance with the terms and specifications contained in the two written proposals, addressed to the Water Board by the plaintiff and James M. Allen, dated respectively December 5th, 1875, and April 19th, 1876, then the plaintiff is not entitled to be paid more than 22 cents per cubic yard for any material excavated by him and distributed within a less distance than 45 feet from the upper edge of the bank of said lake, as directed by the Water engineer, if the jury shall find that the said engineer directed such distribution, although the jury may believe that the material so distributed within a less distance than 45 feet from the lake, was originally deposited by the plaintiff at a greater distance than 45 feet, and was removed within said limit, by order of said Water engineer.

The Court (GAREY, J.,) rejected all the prayers of the plaintiff, except the third, which was granted, and granted all the defendant's prayers, except the fourth, which was refused. The plaintiff excepted, and the verdict and judgment being in his favor, but for a less amount than he claimed, he appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON, and IRVING, J.

*Bradley T. Johnson,* for the appellant.

*Thomas W. Hall, City Solicitor,* for the appellee.

Irving, J., delivered the opinion of the Court.

The appellant sued the Mayor and City Council of Baltimore, in The Baltimore City Court, and declared in two counts. The first count was for money payable to the plaintiff for work and labor done by the plaintiff for the defendant at defendant's request; the second count set up a special contract, made with the Water Board of the City of Baltimore, for dredging Lake Roland; which contract it alleged the city had stopped the plaintiff from completing, by which he had lost large profits he would have received, if he had been permitted to complete the contract.

At the trial the appellant was permitted by the Court to recover, and did recover for certain work and labor mentioned in his third prayer which was granted; but by the instructions of the Court he was denied recovery for the alleged wrongful abrogation of the contract by the city, and for what he claimed to have done, by the directions of the engineer of the Water Board, in the way of spreading and grading the deposit removed from the lake, and which he contended was extra work, not called for by the contract. The City Court thought, that by the true construction of the contract, the City had the right to terminate the contract when three hundred thousand cubic yards of deposit had been removed from the lake; and also that the work, charged for as extra work, was required by the contract, and no extra compensation was demandable for it. The jury was so instructed, as asked by the first and third prayers of the appellee.

The Court also rejected the first and second prayers of the plaintiff, (appellant here), which presented the contrary view. The second prayer of the defendant (appel-

lee) was also granted, which in substance asserted that there was no evidence that the Water Board had the power and right to make the contract, on behalf of the city, which was sued on; but we have not thought it necessary to discuss or to decide the question raised by this instruction, and so elaborately and ably argued by counsel on each side; for, assuming the City Court was in error on that question, the appellant has not suffered by the instruction. If the Water Board had all the power, which appellant's counsel claim for it,—(which we do not decide,) still we think the Court was right in the construction of the contract; and the appellant was permitted to recover all he would be entitled to. By the third prayer of the plaintiff (appellant) the measure of damages was fixed at the contract price. This prayer, asked for by him, was granted, and he cannot complain that he was so restricted when he asked for no other measure of damages, and nothing is said on the subject in the instructions on behalf of the defendant.

The contract which we are to construe is made up of the following proposals and specifications: "Washington, December 6th, 1875. To the Water Board of the City of Baltimore, Gentlemen:—We propose to remove the deposit in Lake Roland, in accordance with the appended specification, viz., six hundred (600) cubic yards per day for twenty-two (22) cents per cubic yard, not less than 300,000 cubic yards shall be removed." The specifications appended were as follows, viz., "The material from the great basin of the lake, or from the entrance to Jones' Falls and Roland Run, thence to near the Relay House, shall be removed to the shore or land at north of lake, bound by mouth of Roland Run and Ellicott's Branch. All of the material shall be laid not less than ten feet from the upper edge of the slopes, and distributed as directed by the engineer, around the above bounds. The material removed from Roland Run will be deposited on

each embankment, also on Jones' Falls, as directed by the engineer of the Water Board. A convenient and intelligent mode of measurement must be agreed upon by the contractor and engineer in charge. The City's agent will, with the contractor's agent, keep a record of the duty performed, which will be paid for by monthly estimates of the amount removed, less twenty (20) per cent., until the completion of the contract, when any money due will be paid. Should the Water Board direct periodical operations of the machine, which will be of the clam shell construction, in consequence of the turbid condition (of the water) that the agitation may produce, it shall be so understood and accepted by the contractors. Signed James M. Allen, Thomas P. Morgan."

Subsequently, at the request of James Curran, who was the Water Board engineer, the contractors submitted this proposal, which was drafted by Curran: "April 19th, 1876. To the Water Board of the City of Baltimore, Gentlemen:—In addition to the dredging of Lake Roland, we propose to remove the material to any point directed by the engineer on the City's land bordering on the lake. And for all material moved beyond the limits of the specifications, thirty-five (35) feet, which shall be the minimum, and the maximum the City's land. We agree to do the work for ten cents per cubic yard." This proposal was also accepted by the Water Board, and the work proceeded during the summer and fall of 1876. In the spring of 1877 Allen assigned the contract to Morgan, the plaintiff, and the Water Board accepted Morgan as the contractor. The work was carried on from time to time during the years 1877, 1878, 1879 and 1880, until 1880, in the month of April, when over three hundred thousand cubic yards having been dredged and removed, (for which $94,636.76 was paid,) the work was stopped by order of the Water engineer, acting under directions from the Water Board. When this was done, the plaintiff con-

tends the whole bottom surface of the lake had not been dredged, which he insists the contract contemplated; and therefore claims damages for not being allowed to complete the dredging of the whole lake. It is very clear, that these two proposals with the specifications annexed form the contract. The circular letter of the engineer, which brought the proposal of the 6th of December, 1875, is not in the record, but it is stated in the bill of exceptions to have been an invitation for proposals to dredge the lake. When the proposal came, it was for dredging not less than 300,000 cubic yards. That proposal was accepted, and bound the employés not to stop the work before that much work had been done. By its very terms, as we understand them, the right of the Board to have the work stopped when that much was dredged is recognized by necessary implication. Fearing that after the contractor had fitted up for the work, he might be stopped before he had paid himself sufficiently for his undertaking, they stipulate that he shall be permitted to do that much work at the least. If he had chosen, when the 300,000 cubic yards had been done, to stop the work, because he found it unremunerative, he could undoubtedly have done so, without the City having any claim on him for breach of contract. That much was to be done, and it was to be done within a period capable of immediate ascertainment, for he was to take out six hundred cubic yards per day. By the specifications, the City reserved the power to have it done in periods, if the condition of the water in the lake made periodical labor necessary. Nothing is said anywhere about dredging the *whole* lake. The deposit in the lake to the extent of three hundred thousand cubic yards was to be removed; and when that was done, in our opinion either party was at liberty to suspend the work and close the contract. It is in evidence, that the portions of the lake toward the mouth of the tributaries that feed it, were dredged over several times during the four years

that the work was going on, because of the rapid accumulation of sediment at those points.  If the contract provided therefore for the removal of *all* the sediment from the lake, it would, as contended by appellee's counsel, have been making a perpetual contract, so rapid was the accumulation of sediment at the points indicated.  This the appellant admits was not, and was not intended to be, the meaning of the contract; but insists that the whole lake was to be gone over under the contract.  The learned Judge of the City Court did not so construe the contract, and accordingly rejected the first prayer of the plaintiff, and granted the first prayer of the defendant; and we think the Court was entirely right in so doing.

We also agree with the City Court in the construction put upon the contract in respect to its provision for distributing the sediment removed around the lake in accordance with the directions of the engineer.  We do not think the appellant was entitled, under the contract, to recover for spreading and grading, as for extra work not provided for by the contract.  The specifications at first provided that "all of the material shall be laid not less than ten (10) feet from the upper end of the lake, and distributed *as directed by the engineer around the above bounds.*"  The second proposal was not intended to supersede the first specifications.  It only was intended to amend the specifications in respect to the distance from the lake the sediment was to be removed.  It provided for its removal thirty-five feet further than was contracted for in the original specifications.  By its very terms it recognized the continuance of the specifications as the basis of computation under the new proposal.

We can see no room for doubt as to the true interpretation of the contract in this particular.  It certainly did not mean that the engineer was only to direct where the sediment was to be dumped in piles, and that it was to be so left in great and unseemly heaps.  It clearly pro-

vides for more than mere dumping. The material removed was "to be laid" a certain number of feet "from the upper edge of the slopes," and to be "*distributed* as directed *by the engineer* around the above bounds." It is evident something more was contemplated and provided for beyond the simple deposit of the sediment on the banks. It was "to be laid" and "distributed." By "distributed" we understand the "spreading and grading" as it is called in the testimony, which was done, and for which extra compensation was claimed. The spreading and grading which was done under the direction of the engineer, being in our opinion provided for by the contract, the second prayer of the appellant was properly rejected, and the third prayer of the appellee was correctly granted. The judgment must be affirmed.

*Judgment affirmed.*

(Decided 12th July, 1882.)