# American Mortgage Company of Scotland *v.* Boyd.

*Bill in Equity to enforce Testamentary Charge on Land.*

1. *Conclusiveness of former decision as rule of property; chancery decree as notice to subsequent purchaser.*—A decree in chancery in a suit instituted by executors to obtain a judicial construction of the will, declaring a legacy to be a lien and charge on land devised to them personally, is constructive notice of the lien to a subsequent purchaser or mortgagee of the lands, satisfaction not having been entered of record; and a bill being filed after the lapse of fifteen years, to enforce the lien for the balance of the legacy remaining unpaid, the court will not, at the instance of the mortgagee, examine into the correctness of that decision, but will regard it as establishing a rule of property, "which the law has said had better be certain and stable than theoretically correct."

2. *Payment of legacy charged on lands, as between devisees.*—A pecuniary legacy being charged on lands which were devised to the two executors jointly, and paid by them with funds of the estate before the charge was declared by a judicial construction of the will, but afterwards refunded to the estate on settlement of their accounts; *held*, on bill filed to enforce the unpaid balance due on the legacy, that the charge should be apportioned between the two devisees according to the amount paid by each in refunding to the estate, and not divided equally between them, at the instance of a mortgagee of the one who had paid less than one half.

3. *Interest on legacy.*—Part of a pecuniary legacy, which was charged on land devised to the executors personally, having been paid by them prematurely, under a misconception of the terms of the will, and a bill afterwards filed to enforce the lien for the balance; the legatee is not chargeable with interest on the amount prematurely paid, although interest is properly charged against the executors on account of undue delay in paying the balance.

4. *Legacy payable on settlement of estate.*—When a legacy is made payable, "one half on the settlement of the estate, and the other half twelve months thereafter," and its amount is to be determined by the shares of the residuary legatees, its amount can only be ascertained on the final settlement of the estate; and the legatee can not complain that the residue was reduced by acts of maladministration on the part of the executor on whose land his legacy was charged, or undue delay in making settlement, since he had adequate remedies, and might have compelled a settlement at the proprer time.

*Conclusiveness of probate decree.*—A decree rendered by the Probate Court on final settlement of a decedent's estate, ascertaining the amount in the hands of the executors for distribution among the residuary legatees, is not conclusive on a legatee who was not made a party, and whose legacy was charged on lands devised to the executors, though its amount was to be determined by the residue ascertained on the final settlement.

APPEAL from the Chancery Court of Lowndes County.

Heard before the Hon. JOHN A. FOSTER.

The facts which led up to the filing of the bill in this case, and those averred and disclosed upon the hearing of the cause are sufficiently stated in the opinion of this court. Upon final submission on the pleadings and proof, the Chancellor ordered a reference to be had before register to ascertain how much, if anything, remained unpaid of the legacy to Mrs. Sallie A. Boyd from said Benj. J. Smith, the testator; directing that the register take the amounts found to be due the other nieces of the testator on the final settlement of the executors in the probate court in 1878 to be the correct amount of the legacy due Sallie A. Boyd under the will. Following this direction, the register held a reference, ascertained the amount to be due Mrs. Boyd on the said basis of calculation; and so reported. On the coming in of the register's report, the chancellor, after modifying it slightly, rendered his final decree, confirming this report, and decreed that the complainants were entitled to a lien on the lands involved to the amount ascertained by the register, as modified, to be unpaid on the legacy of Mrs. Boyd. This appeal is prosecuted from said decree; and there are cross-assignments of errors—the complainants and defendants both assigning the decree of reference and the final decree of the Chancellor as error.

CALDWELL BRADSHAW, and WEBB & TILLMAN, for the mortgage company.

WADDY THOMPSON, TOMPKINS & TROY, and CLEMENTS & BREWER, *contra.*

WALKER, J.—Benjamin J. Smith died in Lowndes County in this State in 1867. By his will he devised to J. B. and B. W. Mason a large tract of land and appointed them his executors. As such executors they filed their bill in the Chancery Court of Lowndes County to obtain a judicial construction of said will and codicil thereto, especially as to the effect of the codicil on the legacy to Sallie A. Boyd. The chancellor held that that legacy was a charge on the property bequeathed to J. B. and B. W. Mason, for which they became personally liable on accepting the bequest in their favor. The decree was affirmed by this court, after a full consideration of the question presented, as shown by the report of the case of *Mason v. Smith*, 49 Ala. 71. The ruling of the court was accepted by all parties concerned as binding and conclusive. Mrs. Boyd would be presumed to have acquiesced in the result,

though not a party to the suit, for the construction adopted by the court was of unequivocal advantage to her. The Masons, having proceeded with the administration of their trust and made a settlement thereof in the Probate Court, all along recognizing Mrs. Boyd's personal claim on them and the lien in her favor on their land as decreed by this court, finally made division of the land bequeathed to them; and thereafter in 1882, J. B. Mason executed a mortgage of the part of the land which fell to him in the allotment to the American Mortgage Company of Scotland, Limited. Mrs. Boyd having died, her surviving husband and children filed their bill in this case to enforce the lien on the land of J. B. Mason for a balance of said legacy alleged to be due from him. The Mortgage Company, as mortgagee, was made a party defendant, and now contends that said will should be so construed as to relieve said lands from the charge of said legacy. In other words, we are asked to over-rule said decision reported in 49 Alabama. That decision was rendered eighteen years ago. The rules of interpretation relied upon by the court in that case are unquestioned.—*Grimball v. Patton*, 70 Ala. 632. The particular application of those rules in that case was such that it is highly probable that, during the many years that have since elapsed, obligations have been recognized and enforced and titles to other property, in business dealings in reference thereto, have been regarded as controlled and their value materially affected by reason of a reliance upon the decision in that case; so that that decision should now be treated as having established one of those rules of property which the law, in its wisdom, has said had better be certain and stable than theoretically correct. When said company accepted its mortgage the record of the decree rendered in the Chancery Court was notice of the existence of the lien, and the absence of any record satisfaction thereof was sufficient to put an intending purchaser upon inquiry to ascertain whether or not the legacy had been paid. It is not to be presumed that the mortgage company supposed it was getting a better title than was in the mortgagor, or that it could have relied on the possibility of defeating a lien which had been decreed in a case in which the mortgagor himself invoked the jurisdiction of the court. The mortgagee must have failed to acquaint itself with what the public records disclosed as to the title, or have accepted the title in subordination to the lien, taking the chances of the legacy having been paid. If there is any hardship now in enforcing the lien as a prior encumbrance on the lands, the mortgagee has only itself to blame. Furthermore, it may very well be that Mrs. Boyd and the complainants, as her successors,

[American Mortgage Co. of Scotland v. Boyd.]

relying upon the security of the lien which this court had declared to exist, have let slip other remedies they may have had for the collection of the legacy. These considerations convince us that it would be unjust and unwise for us, at this time and in the circumstances of this case, to disturb the decision made in *Mason v. Smith, supra.* *Ins. Co. v. Boykin,* 38 Ala. 510; *Goodwin v. Sims,* 86 Ala. 102; *Hibler v. McCartney,* 31 Ala. 501; *Kolb v. Swann,* 58 Md. 516; *Hihn v. Cowetis,* 31 Cal. 398; *O'Brien v. Heeney,* 2 Edwards Ch. 242. This conclusion renders it unnecessary for us to say anything in support of the ruling in *Mason v. Smith, supra.*

Before said will had been judicially construed, the executors, or rather J. B. Mason, for himself and his co-executor, acting on the construction of the will for which they contended, paid out of the funds of the estate in their hands, twelve hundred dollars on the legacy to Mrs. Boyd. When the court finally construed the will so as to make that legacy payable by the Masons individually and chargeable upon the lands devised to them, they recognized their liability as determined by the decision, and in the settlement of the estate afterwards made, they refunded the amount, twelve hundred dollars, to the estate, as having been paid without authority. B. W. Mason furnished ten hundred and seventy-five dollars of this amount so re-paid, and J. B. Mason paid the balance thereof, one hundred and twenty-five dollars. On the ground that said payment on the legacy out of the funds of the estate was made by J. B. Mason, it is now contended that one-half of the amount of that payment should have been allowed as a credit to him in this case. The result of such allowance would be, as to four hundred and seventy-five of the six hundred dollars, to give him, or his mortgagee, the benefit of a payment which has cost him nothing. Both of the executors recognized their liability to make good to the estate what the judicial construction of the will determined to have been a misappropriation of funds. The result of the payments made by the two executors and the subsequent division of the land between them was to leave J. B. Mason with his full share of land and out only one hundred and twenty-five dollars on account of the legacy, while ten hundred and seventy-five dollars of B. W. Mason's money had actually gone towards the payment of the legacy. The amount, only two hundred and sixty dollars and ten cents paid by B. W. Mason in 1883 to secure the release and discharge of himself and his lands from further liability on account of said legacy, strongly indicates that the parties to that transaction settled on the basis of treating the amount of the legacy to Mrs. Boyd as determined by the shares ascertained on the settle-

ment in the Probate Court to be due to the other nieces of the testator, and allowing the sum of ten hundred and seventy-five dollars as a credit to B. W. Mason on his liability for one-half of the legacy; for, on making the calculation on that basis, it will be ascertained that what was then paid by him was about the amount of the balance due on his share of the liability. Whether B. W. Mason settled on that basis or not, still the fact remains, that he was actually out of pocket thirteen hundred and thirty-five dollars and ten cents on account of said legacy, and that the receipts procured by him on his last payments do not purport to discharge J. B. Mason or his lands. And the payments on the legacy having thus far cost J. B. Mason only the one hundred and twenty-five dollars repaid by him to the estate we can see no justice or reason in allowing him a credit of six hundred dollars, and our conclusion is that the ruling of the Chancery Court was, in this regard, correct.

There was no error in refusing to charge complainants with interest on the twelve hundred dollars from the time of the payment thereof in 1868. That payment was made out of the funds of the estate by the executors when they supposed that Mrs. Boyd stood on the same footing in all respects with the testator's other nieces who were residuary legatees. Assuming that the executors could have recovered the money so paid, still they would not be entitled to interest thereon until they made demand for repayment and such demand had been refused—*King v. Diehl*, 9 S. & R. 409; *Ashurst v. Field*, 28 N. J. Eq. 315. As the amount of Mrs. Boyd's legacy is determinable by the amount of the residuum of the estate and its time of payment by the date of the settlement, if the settlement was delayed without sufficient cause she would have been entitled to hold the executors liable for interest on the moneys with which they were chargeable.—*Eubank v. Clark*, 78 Ala. 73; *Englehardt v. Yung's Heirs*, 76 Ala. 534. This right she could not assert as to the amount of twelve hundred dollars paid on her legacy, though such payment was a misappropriation of the funds of the estate, for she was the beneficiary of such misappropriation. Having herself had the use of the twelve hundred dollars, she could not have the executors charged with the interest thereon.

Under the will and codicil as construed by this court in the case of *Mason v. Smith, supra*, the amount of the legacy to Mrs. Boyd was, as has been already stated, to be determined by the amount of the rest and residue of the estate; as to the amount of her share, she was to stand on an equality with the testator's other nieces who were made residuary legatees, and

her legacy was made payable, "one half at the settlement of the estate, and the other half twelve months thereafter." The residue of an estate, disposed of by will, is what is left after paying the debts, funeral and testamentary expenses and charges of administration and satisfying the dispositions of the will which are entitled to preference. The deductions to be be made on account of some of the objects mentioned are dependent on so many contingencies that an attempt even to approximate the amount thereof in advance would generally be idle guesswork. They are ascertained only in the course of administration, and as a rule, when the administration of an estate has proceeded so far that the amount of the residue may be definitely determined, then the estate is ready for settlement. Where, by the provisions of a will, the amount of a legacy is to be determined by the amounts of the shares into which the residuum of the estate is directed to be divided, we think it may safely be said, in the absence of anything in the will pointing to a different conclusion, that the testator intended that the residue as ascertained at the time of the settlement of the estate should constitute the basis of the calculation. The direction as to the time of payment of Mrs. Boyd's legacy, "one half at the settlement of the estate, and the other half twelve months thereafter," indicates that the amount of the legacy was left to be determined by the amount of the residue as ascertained at the time of the settlement. Against this conclusion it was urged that as the testator secured to Mrs. Boyd her legacy by making it a charge on a large body of land, he could not have intended that the amount thereof should be subject to diminution by the acts of the executors in unduly postponing their settlement, and in the meantime suffering a waste and depreciation of the assets of the estate, so that the residue as then ascertained would be less than it would have been at an earlier period of their administration. · This suggestion is readily answered. The legatee could have coerced the executors to a settlement at the proper time. If they unduly delayed the settlement they would be chargeable with interest, as above shown. If by their fault the assets have been wasted or depreciated, they could be made responsible for the losses thus resulting; and the lien on the land secures the payment of whatever may found to be chargeable against the executors on account of the legacy. The conclusion here reached as to the time when the amount of the legacy was to be ascertained finds support in the case of *Kirkman v. Mason*, 17 Ala. 134. It would, however, be unjust to the legatee for the amount of the legacy to be determined as the result of a proceeding to which she was not made a party. To conclude Mrs. Boyd by

[Ware v. Hamilton Brown Shoe Co.]

the settlement made in the Probate Court, she should have been made a party to the proceeding, and thereby afforded an opportunity to contest the accounts of the executors. It may be that she would have been able to materially increase the debits against them and to secure the disallowance of credits then claimed and acquiesced in; if so, the result would have been to show a larger residue chargeable against them. Mrs. Boyd not having been made a party to that settlement, the complainants who succeed to her rights should have the opportunity in this case to show the true amount of the residue with which the executors were properly chargeable at the date of the settlement made by them in the Probate Court. The court below erred in the decree of reference to the register in directing that the sums, as found by the final settlement in the Probate Court to be the shares of the other nieces of the said testator, be taken as the true amount of the legacy to said Sallie A. Boyd.

On the appeal of the American Mortgage Company of Scotland, Limited, the decree of the Chancery Court is affirmed. The complainants below, under an agreement made pursuant to Rule 3 of the Rules of Practice in this court, have made a cross-assignment of errors. On that assignment the decree of the Chancery Court is reversed for the errors above stated, and the cause is remanded.

STONE, C. J., and CLOPTON, J., not sitting.